IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHAKISHA SHAVONE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-114 |
| | ) | |
| ANDREW SAUL, Commissioner of Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Chakisha Shavone Harris appeals the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff applied for DIB on April 10, 2014, and protectively applied for SSI on April 14, 2014, alleging an amended disability onset date of March 2, 2012. Tr. ("R."), pp. 13, 322-332, 378.  For purposes of DIB, Plaintiff last met the insured status requirements of the Social

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Andrew Saul, Commissioner of Social Security Administration, as the proper Defendant.

Security Act on December 31, 2015. R. 13. Plaintiff was thirty-three years old at her amended alleged disability onset date and was thirty-eight years old when the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 24, 26, 378. Plaintiff applied for disability benefits based on a combination of alleged impairments, including nerve damage, pain and numbness, cervical spine surgery, diabetes, high blood pressure, obesity, acid reflux disease, and spine problems. R. 383. Plaintiff completed the eleventh grade, and prior to her alleged disability accrued a relevant work history as a nurse assistant, housekeeper, dining room attendant, and daycare worker. R. 24, 384.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 104-33, 138-69. Plaintiff then requested a hearing before an ALJ, R. 232, and the ALJ held a hearing on April 3, 2017. R. 37-96. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by Dorita P. Watson, a non-attorney representative, and Theresa Wolford, a Vocational Expert. Id. On July 20, 2017, the ALJ issued an unfavorable decision. R. 10-26. Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 2, 2012, the amended alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: major depressive disorder; panic disorder; morbid obesity; degenerative changes of the cervical and lumbar spine, status post C5-C6 anterior disc fusion; diabetes mellitus, type II; carpal tunnel syndrome; gastro-esophageal reflux disease; history of gastroenteritis and colitis; and hypertension. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform sedentary work[2] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; frequent handling and fingering; simple routine tasks; and occasional interaction with the public. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including final assembler, document preparer, and table worker. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from March 2, 2012, through the date of the ALJ's decision. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 13-21.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ erred by: (1) failing adequately to explain her RFC findings as to Plaintiff's (i) migraine headaches and muscle spasms, (ii) moderate difficulties in concentration, persistence, and pace, and (iii) bilateral carpal tunnel syndrome; (2) failing to properly consider whether Plaintiff's impairments met or medically equaled the severity of Listing 1.04; and (3) finding Plaintiff's

---

[2]"Sedentary work" is defined as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

subjective complaints as to the degenerative changes of her cervical and lumbar spine were not consistent with the objective evidence of record. See doc. no. 19 ("Pl.'s Br."). The Commissioner maintains the ALJ's decision is supported by substantial evidence and should therefore be affirmed. See doc. no. 20 ("Comm'r's Br.").

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of

fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ Did Not Properly Consider Whether Plaintiff's Impairments Met or Medically Equaled Listing 1.04

Plaintiff argues the ALJ did not adequately determine whether her severe impairments met or medically equaled Listing 1.04. Pl.'s Br., pp. 21-22. At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter

how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 404.1520(d).

> Listing 1.04 requires:
>
> [A disorder] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04.

At step three, the ALJ found Plaintiff's severe impairments did not meet Listing 1.04 because "[t]he medical evidence fails to show that the claimant suffers from nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with pseudoclaudication." R. 17. However, in determining Plaintiff's RFC at step four, the ALJ stated she considered Plaintiff's

history of cervical and lumbar degenerative changes, as well as her 2009 fusion of the cervical spine at C5-C6.  R. 21.  The ALJ noted Plaintiff periodically reported neck and back pain but generally had normal range of motion and strength, diffuse cervical tenderness but no midline tenderness, and no focal neurological deficits.  Id.  The ALJ stated a 2016 physical exam and MRI revealed only occipital pain and muscle spasm but not new acute problems or diseases that could be treated surgically.  Id.  Finally, the ALJ noted Dr. Cargill Alleyne, Jr., M.D., opined Plaintiff had several limitations because of her 2009 cervical surgery and continued effects from spinal cord compression, including the following: no lifting greater than ten pounds, no bending or stooping, and no prolonged standing.  R. 22.  The ALJ determined the medical evidence of record did not support those limitations, as Plaintiff had not been advised to significantly limit her activity level and her treatment regimen did not suggest such limitations were warranted.  Id.

The ALJ's determination that the medical evidence fails to show Plaintiff suffers from nerve root compression as required by Listing 1.04(A) is contradicted by the record.  Indeed, medical imaging of Plaintiff's cervical spine has consistently shown compression of her spinal cord at vertebrae C5-C6.  Following Plaintiff's 2009 disc fusion surgery, Plaintiff continued to complain of pain and diminished sensation in her upper left extremities.  R. 514.  A March 1, 2010 MRI revealed a central bony protrusion at C5-C6 abutting the core and causing mild core deformity.  R. 515.  Upon review, Dr. Dan C. Martin, M.D., assessed Plaintiff as suffering from cervical spondylosis with radicular symptoms, scheduled a cervical medial branch block, and noted Plaintiff would potentially be a good candidate for receiving radiofrequency ablation to her dorsal root ganglia.  R. 515.

On August 16, 2014, Plaintiff underwent a cervical MRI without contrast, which showed a central osteophyte complex at C5-C6 producing mild deformity of the thecal sac and mild

flattening of the spinal cord.  R. 2686.  Finally, on January 7, 2016, Plaintiff underwent cervical x-rays and an MRI.  R. 1471-74.  The x-rays showed mild spondylosis at C4-C5 and C6-C7 levels but the screening was described as "negative."  R. 1471.  Nevertheless, the MRI revealed a shallow annular bulge with intact subarachnoid spaces at C4-C5, which reduced the effective anteroposterior canal diameter to approximately 10.8 mm.  R. 1473.  Additionally, the MRI identified a "probable central bone bar" contributing to the partial effacement of the ventral subarachnoid space and minimal indentation of the ventral cord in an effective anteroposterior canal diameter of approximately 9.8 mm, which was not significantly changed from the August 16, 2014 examination.  R. 1474.  Thus, although no acute abnormality of the cervical spine was reported, there was minimal indentation of the ventral cord due to the central bone bar at C5-C6. Id.

Defendant argues the imaging studies demonstrate the compromise of Plaintiff's spinal cord was only mild and did not affect the spinal cord's signal.  Comm'r's Br., p. 8.  However, Defendant thereby acknowledges what the ALJ did not; namely, there is objective evidence of record showing Plaintiff suffered nerve root compression.  Furthermore, contrary to Defendant's argument, Listing 1.04(A) does not require either signal loss or any specific amount of compression.  See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A); Weathers v. Astrue, No. 7:10-CV-03(HL) 2011 WL 1103348, at *3 (M.D. Ga. Feb. 24, 2011), *adopted by* 2011 WL 1059140 (M.D. Ga. Mar. 23, 2011) (finding mild nerve root compression satisfied primary requirement of Listing 1.04(A) but determining plaintiff failed to satisfy remaining requirements).  Indeed, Plaintiff need only show her nerve root compression was characterized by the following:  (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; and (3) motor loss accompanied by sensory or reflex loss.  20 C.F.R. § Pt. 404, Subpt. P, App. 1,

§ 1.04(A). As described below, the record contains evidence sufficient to support a potential finding the additional requirements of Listing 1.04 were satisfied.

First, Plaintiff regularly complained of pain resulting from her cervical spine issues. On March 2, 2010, Plaintiff complained of neck and arm pain and numbness on her left side. R. 513. Based on a positive Spurling test and the results of the March 1, 2010 MRI, Dr. Martin diagnosed Plaintiff with cervical spondylosis with radicular symptoms. R. 514-15. On May 22, 2013, Plaintiff complained of pain and numbness in her lower legs, hands, and wrists, and the physical examination revealed limited range of motion of the left neck with tenderness in the region of the cervical portion of the left trapezius muscle. R. 1021-22. Cassandra Henry, PA, assessed the cause of Plaintiff's symptoms as diabetes and cervical radiculopathy and ordered x-rays of Plaintiff's spine. R. 1023.

On February 19, 2014, Plaintiff complained of an acute increase of pain in her neck and left side of her body, as well as increased numbness in her left extremities. R. 1034. Plaintiff cited an inability to bear weight, numbness, stiffness, and tingling. Id. Further, Plaintiff exhibited decreased range of motion in her cervical back, was in mild distress from pain, and had decreased sensation to light touches and pin pricks on her left side. R. 1035. Dr. Mana Myers Black, M.D., diagnosed Plaintiff with cervical neck pain with evidence of disc disease. Id. On January 8, 2015, Plaintiff complained of chronic neck pain radiating to her left upper extremity and head and exhibited painful range of motion and tenderness in her neck and left arm. R. 1381-84. Lindsay N. Moore, NP, diagnosed Plaintiff with neck injury, cervical strain, neck pain, cervical radiculopathy, and contusion. R. 1384. Thus, there is evidence Plaintiff experienced neuro-anatomic distribution of pain caused by spinal cord compression following her 2009 surgery and through the period at issue.

Second, Plaintiff frequently exhibited limitation of motion of her cervical spine. On October 14, 2009, Plaintiff complained of persistent left neck, arm, and shoulder pain and numbness following her March 2009 disc fusion surgery. R. 482. Dr. Fredrick C. House, M.D., noted Plaintiff had limited motion in her cervical spine and "very significant" weakness in her left arm. R. 483. Dr. House also identified spondylosis at C5-C6, persistent left side weakness, and marked impairment of hand use. Id. On March 23, 2013, Plaintiff complained she was unable to flex, extend, or turn her head left due to pain in her neck. R. 1015. Dr. Benjamin L. Rucker, M.D., noted Plaintiff had limited range of motion of the left neck with tenderness in the region of the cervical portion of the left trapezius muscle and attributed the pain to cervicalgia. R. 1016-17. On May 22, 2013, Plaintiff had a limited range of motion and tenderness in the left neck, which Ms. Henry, PA, attributed to cervical radiculopathy. R 1022-23.

On February 19, 2014, Plaintiff exhibited decreased range of motion, tenderness, and spasm in her cervical back, and Dr. Black diagnosed Plaintiff with cervical neck pain with evidence of disc disease. R. 1035. On January 8, 2015, Plaintiff complained of pain in her left posterior neck radiating to her head and left upper extremity, and Ms. Moore, NP, noted Plaintiff had painful range of motion and tenderness in her neck and diagnosed Plaintiff with cervical strain, neck pain, and cervical radiculopathy. R. 1381-84. Thus, the record contains evidence supporting a finding Plaintiff's nerve root compression resulted in limitation of motion of the spine.

Finally, there is evidence Plaintiff suffered motor loss accompanied by sensory or reflex loss. On October 14, 2009, Plaintiff complained of persistent left neck, arm, and shoulder pain and numbness, and Dr. House noted Plaintiff had "very significant" weakness in her left arm, severe dysmetria on her left side, and slightly decreased left bicep deep tendon reflexes. R. 482-

83. Dr. House also noted Plaintiff had marked hypesthesia in her left lower neck, shoulder, and arm when subjected to pinprick sensations. R. 483. On March 3, 2010, Dr. Martin noted Plaintiff's strength was somewhat limited in her left upper extremity due to her pain and she had slightly diminished sensation and deep tendon reflexes in her left upper extremities. R. 514. On February 19, 2014, Dr. Black stated Plaintiff had decreased range of motion and tenderness in her left shoulder and cervical back, as well as decreased sensation to light touch and pin pricks on her left forearm, hand, and lower extremity. R. 1035. Additionally, on February 26, 2014, Dr. Cargill noted Plaintiff had diminished strength and reflexes in her left upper extremity and stated Plaintiff's muscle weakness was likely an effect of her prior spinal cord injury. R. 2678. In sum, there is objective evidence supporting a potential finding Plaintiff's severe impairment of her cervical spine satisfied the requirements of Listing 1.04(A). Accordingly, Plaintiff is not entitled to remand on this basis.

The Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications, but the

Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted.

The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 25th day of July, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA